```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
GEORGE J. NAUSS,

                Plaintiff,

      -against-                        MEMORANDUM AND ORDER
                                       03-CV-2593 (JS)(MLO)
JO ANNE B. BARNHART, Commissioner,
Social Security Administration,

                Defendant.
----------------------------------X
APPEARANCES:

For Plaintiff:     George J. Nauss, Pro Se
                   33 Davidson St.
                   Wyandanch, New York 11798

For Defendant:     Orelia E. Merchant, Esq.
                   Assistant United States Attorney, E.D.N.Y.
                   One Pierrepont Plaza
                   Brooklyn, New York 11201
```

SEYBERT, District Judge:

Plaintiff George Nauss ("Plaintiff"), pro se, commenced this action pursuant to 42 U.S.C. § 405(g), challenging the Defendant Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits. Pending before the Court is the Commissioner's motion for judgment on the pleadings, requesting that the Court uphold the Administrative Law Judge's ("ALJ") denial of benefits.

For the reasons stated herein, the Commissioner's motion for judgment on the pleadings is GRANTED. Plaintiff's appeal of the Commissioner's determination is DENIED.

BACKGROUND

I.  Procedural History

In July 1988, while working as a groundskeeper for Nassau County, Plaintiff suffered serious back injuries when he was struck by a payloader shovel. Plaintiff has not returned to any work since this accident.

In July 1990, Plaintiff filed an application for disability benefits with the Social Security Administration ("SSA"), claiming that the severity of his back condition precluded him from working. After being denied benefits for approximately two years, on June 12, 1992, an ALJ approved Plaintiff's application and granted Plaintiff disability benefits retroactive to the date of his injury on July 18, 1988.

In June 1996, as part of the continuing disability review process, the SSA revisited Plaintiff's disability status. The Commissioner concluded that Plaintiff was disabled, and approved Plaintiff's continued disability benefits. The Commissioner's conclusion was based on examinations performed by Plaintiff's orthopedic surgeon, Martin A. Lehman, M.D., and a Commissioner-retained consulting physician, S. K. Dutta, M.D.[1]

---

[1] Plaintiff's medical condition in 1996 provides the point of reference for determining the improvement in Plaintiff's disability, as 1996 was his last favorable decision granting benefits. See 20 C.F.R. § 404.1594(b)(7). For this reason, Plaintiff's medical records prior to the 1996 review are not included in this Court's review.

In May 1999, the SSA conducted a second continuing disability review. The Commissioner found Plaintiff's injuries had significantly improved since June 3, 1996, and that Plaintiff was no longer disabled within the meaning of the statute as of January 2000. Plaintiff requested reconsideration of this decision before a Disability Hearing Officer on May 22, 2000. After the Disability Hearing Officer upheld the Commissioner's decision, Plaintiff sought an ALJ hearing. Plaintiff was granted a hearing on June 14, 2001. On October 17, 2001, the ALJ found that Plaintiff was no longer disabled, and could now perform light work[2]. More specifically, the ALJ found Plaintiff's disability ceased in January 2000.

The Appeals Court denied Plaintiff's request for review on April 4, 2003, effectively cementing the ALJ's decision as the final determination of the Commissioner. Plaintiff filed this action on May 23, 2003 requesting maximum monthly insurance and Supplemental Security Income benefits, retroactive to the date of denial.

On March 7, 2005, this Court issued an Order dismissing

---

[2]Light work is defined by statute as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full range of light work you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

without prejudice Plaintiff's appeal because Plaintiff failed to timely file a motion for judgment on the pleadings. The Second Circuit Court of Appeals reversed this Court's March Order and remanded the matter for further proceedings. In accordance with the Second Circuit's mandate, by Order dated May 31, 2006, this Court granted Plaintiff a final opportunity to submit a motion for judgment on the pleadings. In the May 2006 Order, this Court emphasized the importance of Plaintiff making a submission to the Court, noting that "[w]ithout Plaintiff's guidance concerning the aspects of the ALJ's decision he disagrees with, the Court's ability to undertake an appellate review is severely handicapped." Nauss v. Barnhart, No. 03-CV-2593, at 2 (May 31, 2006). Once again, Plaintiff failed to submit anything to this Court. In accordance with the Second Circuit's mandate, however, the Court will now address the merits of Plaintiff's appeal and the Commissioner's motion for judgment on the pleadings.

II. Factual Background And Medical Evidence

Plaintiff, a forty-six year old male with a tenth grade education, suffered serious back injuries when struck by a payloader shovel while working, on or about July 1988. Plaintiff has not engaged in substantial gainful activity since July 1988.

At Plaintiff's first disability review on May 6, 1996, Dr. Dutta observed that Plaintiff had a slight limp, with spinal tenderness and paraspinal muscle spasm. (R. at 202, 203).

Plaintiff's range of spinal motion was eighty degrees of flexion and twenty degrees of extension and lateral bending. (R. at 203). Dutta noted tenderness in the right ankle, and a straight leg test was positive at seventy-five degrees.[3] Based on x-ray evidence of lumbar spine degeneration, Dutta diagnosed Plaintiff with spondylosis of L-5, the fifth lumbar disc.[4]  Id. Dutta concluded that Plaintiff could sit or stand for one to two hours, walk one to two miles, and could carry 20 to 25 pounds.  Id.

On March 25, 1996, Dr. Lehman, Plaintiff's orthopedist, found Plaintiff had muscle spasms and tenderness in the mid and lower lumbar spine. (R. at 199). Lehman found Plaintiff's range of spinal motion to be 50 degrees of flexion, and ten degrees of extension and lateral bending.  Id. Plaintiff's straight leg raise was positive at 55 degrees with a diminished sensitivity to pain on both thighs.  Id. Lehman diagnosed Plaintiff with acute recurrent sprain of the lumbrosacral spine. (R. at 199). Lehman concluded that Plaintiff could stand for 20 minutes, walk two to three

---

[3] Plaintiff's ankle injury was from an earlier and unrelated fracture that occurred in 1976. (R. at 205).

[4] The Court notes that while Dr. Dutta found the Plaintiff to have spondylosis at L-5, the remaining physicians found spondylolysis at L-5. Spondylosis is the development of abnormal bone growths on the vertebrae resulting from age-related damage, which causes the discs to erode at the edges, generally occurring on the cervical spine at C3-C7. Spondylolysis is a disruption in part of the vertebral arch which may lead to the vertebrae slipping forward, generally occurring in the lumbar spine. Attorney's Textbook of Medicine vol. 4, § 11.33, 13.20 (Roscoe N. Gray & Louise J. Gordy eds., 3d ed., Matthew Bender 1998).

5

blocks, and lift no more than five pounds. (R. at 200).

In 1999, Plaintiff had a second disability review. Before making a decision as to Plaintiff's current status, the New York State Department of Social Services requested a medical examination take place, as Plaintiff had not seen a doctor since 1996. (R. 151-154). Plaintiff met with M. Amini, M.D. on October 6, 1999. Dr. Amini found Plaintiff had some discomfort with spinal movement in all directions, but had a range of ninety degrees flexion, thirty degrees extension, and an absence of spinal swelling. (R. at 206). Amini noted that range of motion in the knees and hips was without any discomfort, and within the normal limits. Id. Further, Plaintiff had no problem sitting up from the lying down position. (R. at 205). Plaintiff had average leg and grip strength, and sensation to pinprick was not diminished. (R. at 206). A radiology report confirmed disc space narrowing at L-5, consistent with spondyloysis. Amini concluded that Plaintiff had no limitation of standing, sitting, lifting or carrying objects. Id.

On January 11, 2000, consulting physician C. Manley, M.D., reviewed Plaintiff's record and concluded that Plaintiff was capable of light work. Dr. Manley specifically stated that Plaintiff has a normal gait, no spasms nor tenderness, and no limitations of sitting, standing, pushing or pulling. (R. at 161).

On May 9, 2000, Plaintiff was examined by Armand E.

Abulencia, M.D. Although tenderness was located in the paraspinous muscles, Plaintiff had a negative straight leg raise on both sides. (R. at 209). Upon review of x-rays, Dr. Abulencia noted possible spondylolysis of the fifth lumbar. Id.

On May 15, 2000, Plaintiff complained of right elbow pain. Upon examination, Dr. Abulencia found Plaintiff had swelling and tenderness over the origin of the extensor carpi radialis brevis, but full and painless range of motion in his right elbow.[5] (R. at 224). X-rays revealed no evidence of a fracture, dislocation or any other bone, joint or soft tissue abnormality. Id. Dr. Abulencia diagnosed Plaintiff with right lateral epicondylitis, to be treated with ibuprofen and a brace. Id.

On June 7, 2000, Plaintiff returned to Dr. Abulencia for a follow-up examination. Abulencia reported tenderness in Plaintiff's extensor carpi radialis brevis and recommended continuing with the ibuprofen. (R. at 225). An examination of Plaintiff's lower back revealed tenderness in the paraspinal muscles and a negative straight leg raise on both sides. Id. At Dr. Abulencia's request, Plaintiff underwent a CT scan. Id. On June 30, 2000, Plaintiff's CT scan confirmed he suffered from L5 bilateral spondylolysis and bulging discs at L3-4 and L4-5 associated with bilateral neural foraminal narrowing at L3-4. (R.

---

[5]The extensor carpi radialis brevis is a short muscle located in the forearm. Stedman's Medical Dictionary (Pugh, Maureen Barlow, 27th ed., Lippincott, Williams & Wilkins 2000).

7

at 221).

At Plaintiff's next visit to Abulencia, on May 10, 2001, Plaintiff complained of lower back pain, but without numbness, tingling or pain down his legs. (R. at 226). Abulencia found tenderness over the paraspinous muscles and a negative straight leg raise on both sides. Id. Abulencia prescribed Celebrex and physical therapy. On May 15, 2001, Plaintiff was evaluated for physical therapy. (R. 228-232). Plaintiff had normal motion of lumbar flexion and extension, ten out of twenty degrees of lateral flexion, and twenty-five out of thirty degrees of lumbar rotation. (R. at 231).

A hearing was held with the ALJ on June 14, 2001, at Plaintiff's request, to review the earlier decision terminating his disability insurance benefits. At this hearing, Plaintiff testified that he experiences continuous lower back and leg pain. (R. at 26, 28). Plaintiff expressed difficulty with standing for more than fifteen or twenty minutes and lifting more than five pounds. (R. at 29-30). According to Plaintiff, walking more than half a block generated great pain and he often used a cane while walking, though he did not bring the cane to the hearing. (R. at 40, 41). Despite physical therapy, Plaintiff stated that his pain flares up frequently and is so intense at times, he is unable to walk. (R. at 35). Plaintiff testified that he does light housework, including laundry and cleaning, and spends his time

8

watching television and driving.  Plaintiff further stated that during the year 1999, he was not taking pain medication other than aspirin.  (R. at 31-33).  Before rendering a decision, the ALJ ordered an orthopedic consultative examination.

On July 10, 2001, Kenneth S. Glass, M.D. examined Plaintiff, at the request of the ALJ.  Dr. Glass reviewed Plaintiff's entire medical record, with the exception of X-rays and MRIs.  (R. at 233).  Upon examination, Dr. Glass found Plaintiff could sit from a standing position and stand from a sitting position.  (R. at 234).  Plaintiff had full range of motion of the cervical spine, shoulders, elbows and wrists.  Id.  Plaintiff had full range of motion at the thoracic spine, and an eighty degree range at the lumbar spine.  Id.  Dr. Glass found that the range of motion of the knees and ankles was full, and there was no evidence of swelling or instability in the right ankle.  Id.  Dr. Glass diagnosed Plaintiff with chronic thoracic and lumbar sprain, and recommended Plaintiff not participate in heavy lifting, pushing, pulling or carrying greater than 50 pounds.  Id.  Plaintiff could occasionally climb, kneel, crouch, crawl, or stoop, but noted that sitting and standing were unaffected by Plaintiff's condition.  (R. at 236).

## DISCUSSION

I. Standard Of Review

In reviewing the ruling of the ALJ, this Court will not

determine de novo whether Plaintiff is in fact disabled, but rather, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000)(internal quotations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotations omitted). The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). This Court must examine the entire record, including any conflicting evidence and any evidence from which conflicting inferences may be drawn when deciding if the findings are supported by substantial evidence. See Gonzalez v. Barnhart, No. 01-CV-7449, 2003 WL 21204448, at *2 (E.D.N.Y. May 21, 2003)(internal quotations omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).

When a court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson, 269 F. Supp. 2d at 84. The Court may not substitute its own judgment for that of the ALJ just because this Court would come to a different

conclusion after a de novo review. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)(internal quotations omitted).

## II. Establishing A Disability

An applicant must be disabled within the meaning of the Social Security Act (the "Act") to receive federal disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), 423(d). A claimant is disabled under the Act when he can show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining if a claimant is disabled as defined by the Act. See Shaw, 221 F.3d at 132. First, the claimant must not be engaged in any substantial gainful activity. See 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he or she suffers from a "severe impairment" that significantly limits his or her mental or physical ability to do basic work activities. See 20 C.F.R. § 404.1520(c). Third, the claimant must show that his or her

impairment is equivalent to one of the listed impairments. See 20 C.F.R. § 404.1520(d). Fourth, if his or her impairment or its equivalent is not listed in the Appendix, the claimant must show that he or she does not have the residual functional capacity to perform tasks required in his or her previous employment. See 20 C.F.R. § 404.1520(e). Fifth, if the claimant successfully makes these showings, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. See 20 C.F.R. § 404.1520(f). The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. See Shaw, 221 F.3d at 132. "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family and others; and (4) the claimant's educational background, age and work experience." Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003)(internal citation omitted).

Here, the ALJ compared Plaintiff's disability in 1996 with the more recent medical records. The ALJ gave substantial weight to the July 10, 2001 diagnosis made by Dr. Glass. Dr. Glass' examination of Plaintiff revealed a full range of motion in the cervical spine, thoracic spine, knees and ankles, and an eighty

degree range of motion in the lumbar spine.  Plaintiff's strength was considered good, and he was able to sit and stand with no problem.

The ALJ also afforded great weight to the diagnosis given by Dr. Abulencia, Plaintiff's orthopedist.  Dr. Abulencia found on May 5, 2000 that Plaintiff's lower extremity reflexes were good, straight leg raise was negative bilaterally, and x-rays showed a good spinal alignment.  Dr. Abulencia reviewed Plaintiff's CT scan and confirmed spondylolysis, but did not find Plaintiff unable to perform light work.

The ALJ also considered the October 6, 1999 examination by Dr. Amini,[6] which found Plaintiff walked with a normal gait, could forward flex to ninety degrees, and had full leg strength.  There was no swelling or tenderness in Plaintiff's knees or spine, and only slight discomfort with the range of motion in his lumbar spine.  Dr. Amini diagnosed Plaintiff as having no limitations of sitting, standing, walking, bending, climbing, lifting, carrying, pushing or pulling.  Prior to this court-requested examination with Dr. Amini, Plaintiff had not seen a doctor since 1996.  The ALJ also considered Plaintiff's physical therapy reports and subjective allegations of pain.

---

[6]The Court notes that the ALJ refers to the October 6, 1999 examination by Dr. Dutta labeled Exhibit 32.  Dr. Dutta examined Plaintiff on May 6, 1996, while Dr. Amini's examination of Plaintiff on October 6, 1999 is labeled Exhibit 32.

13

In the opinion of the ALJ, all the evidence supported a finding that Plaintiff has not been disabled since January 2000, as defined by the Act, and therefore, is no longer entitled to disability benefits. The ALJ concluded that while Plaintiff has had severe back disorders, he does not have an impairment listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ noted that the weight of the medical evidence, despite Plaintiff's subjective allegations of pain, established improvement in Plaintiff's medical condition. Since January 2000, Plaintiff has had the ability to lift, carry, push and pull twenty pounds, sit six hours in an eight hour day and stand six hours in an eight hour day. Admittedly, Plaintiff no longer has the residual functional capacity to perform tasks required in his previous employment. However, given Plaintiff's age, education and current functional capacity, the ALJ found Plaintiff can engage in light work, as defined in 20 C.F.R. § 404.1567(b).

This Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff, as of January 2000, is not disabled as defined by the Act. While evidence supporting Plaintiff's claim of disability is present in the record, the function of this Court is not to substitute its judgment of credibility and probative value for that of the ALJ. The ALJ has applied the proper legal standards for assessing Plaintiff's claim, and has considered all of the evidence

14

presented. Therefore, this Court finds no basis to disturb the decision of the ALJ.

## CONCLUSION

For all of the reasons set forth herein, the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
March 19, 2007